UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| **Quintin M. Littlejohn**, | ) | C/A No. 6:07-0007-RBH-WMC |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Report and Recommendation** |
| | ) | |
| **Mary Elnora Manning Littlejohn**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# *Background of this Case*

The plaintiff is a pre-trial detainee at the Cherokee County Detention
Center in Gaffney, South Carolina. Information provided by the plaintiff in his
recently-filed habeas corpus action, Civil Action No. 6:06-3155-RBH-WMC,
he has been charged with possession of crack cocaine.

The plaintiff is under an order of pre-filing review. *See* Graham v.
Riddle, 554 F.2d 133, 134-135 & n. * (4th Cir. 1977).[1] The plaintiff was

---

[1]The order of pre-filing review was entered on July 10, 1998, by the Honorable G. Ross
Anderson, Jr., United States District Judge, in Quintin Littlejohn v. William J. Clinton, President of
the United States, Civil Action No. 6:98-1169-13AK. Judge Anderson's order authorizes the Clerk's
Office to assign civil action numbers to the plaintiff's pleadings for docket control purposes.

1

Dockets.Justia.com

confined in the South Carolina Department of Corrections until May of 2003,

when he "maxed out" his sentence for his 1982 conviction for armed robbery

entered in the Court of General Sessions for Cherokee County.  Prior to his

current incarceration, the plaintiff resided in Gaffney, South Carolina.[2]

When the above-captioned case was received, it was not in "proper

form."  Hence, in the order filed in this case on January 11, 2007, the

undersigned directed the plaintiff to submit a Statement of Assets and answer

Special Interrogatories.  The plaintiff has done so.  Hence, the above-

captioned case is now "in proper form."

In the plaintiff's Answers to the Court's Special Interrogatories, the

plaintiff states that the defendant is his "mother — wife  See Good Kirk — Bad

Kirk."  In light of the three prior cases in which the plaintiff has raised "evil

twin"-type allegations against various defendants, it appears that the plaintiff

---

[2]*See* pleadings in Quintin Littlejohn v. David Edwards Toyota; Mark Edwards; and All Agents in Active Concert, Civil Action No. 7:06-1012-RBH-WMC.  This court may take judicial notice of Civil Action No. 7:06-1012-RBH-WMC.  Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970).  *See also* Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239, 1989 U.S.App. LEXIS® 16328 (4th Cir. 1989)("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'"); Mann v. Peoples First National Bank & Trust Co., 209 F.2d 570, 572 (4th Cir. 1954)(approving district court's taking judicial notice of prior suit with same parties: "We think that the judge below was correct in holding that he could take judicial notice of the proceedings had before him in the prior suit to which Mann and the Distilling Company as well as the bank were parties."); and United States v. Parker, 956 F.2d 169, 171, 1992 U.S.App. LEXIS® 1319 (8th Cir. 1992).

has brought suit pursuant to 42 U.S.C. § 1983 against his mother and her

"evil twin."[3]

---

[3]*See, e.g.*, pleadings in <u>*Littlejohn v. Dodge Frederick, et al.*</u>, Civil Action No. 6:01-0780-GRA-WMC, where the plaintiff referred to an "evil twin" factor on page 3 of the complaint because his then-SCDC inmate number "added up" to 666. Allegations relating to the alleged actions of "twins" or impersonators have required the attention of various courts. *See* Christine Corcos, Isabel Corcos, and Brian Stockhoff, <u>Double-Take: A Second Look at Cloning, Science Fiction and Law</u>, 59 La. L. Rev. 1041 (Summer 1999):

> Cloning (the artificial creation of twins) as a concept unites many of humankind's most deeply rooted fears and deeply cherished hopes. * * * In the image of two beings phenotypically and genotypically so much alike we see the "evil twin" of legend, a category which includes the doppelganger, the Golem, and the good twin/bad twin dichotomy so beloved of Hollywood which resonates in real life. We have recently had the case of Sunny and Gina Han, in which one twin conspired to murder the other and take over her identity. * * * Farther afield, but no less frightening, we see the desperate evil of psychological twinning, in which one individual's "good nature" and "bad nature" are divided, giving us the very obvious lessons of Star Trek's The Enemy Within (the "good Kirk, bad Kirk" episode, in which Kirk is split into two physically identical but morally opposite halves). * * * We currently celebrate the uniqueness of twins and multiples. Twinning is a favorite Madison Avenue gimmick, and while we value its amusement and amazement value, we also recognize that it incorporates deceit. The twin with the Toni * * * might steal her sister's boyfriend, not to mention that the twins acting in concert might thoroughly confuse their parents and teachers.

*See also* <u>State v. Carter</u>, 100 Wash.App. 1028, 2000 Wash. App. LEXIS® 595, 2000 WESTLAW® 420660 (Wash.App. 2000), *review denied*, <u>State v. Carter</u>, 141 Wash.2d 1026, 11 P.3d 824, 2000 Wash. LEXIS® 693 (Wash. 2000)(quoting prosecutor's comment: "To believe otherwise, you have to believe that there's somehow an evil twin out there that matches everything with Mr. Carter."); and <u>Commonwealth v. Fletcher</u>, 561 Pa. 266, 750 A.2d 261, 2000 Pa. LEXIS® 717 (2000)("Specifically, the prosecutor stated, 'I listened to [defense counsel]. It seemed like a totally different man today. It must have been Skippy, the evil twin brother that has been here for the past 10 days.'"), *cert. denied*, <u>Fletcher v. Pennsylvania</u>, 531 U.S. 1035, 138 L.Ed.2d 533,121 S.Ct. 623, 2000 U.S. LEXIS® 8133 (2000), *superannuated on unrelated grounds by* <u>Commonwealth v. Freeman</u>, 573 Pa. 532, 827 A.2d 385, 2003 Pa. LEXIS® 916 (2003), *cert. denied*, <u>Freeman v. Pennsylvania</u>, 543 U.S. 822, 125 S.Ct. 30, 160 L.Ed.2d 31, 2004 U.S. LEXIS® 5689 (2004).

# *Discussion*

Under established local procedure in this judicial district, a careful review[4] has been made of the *pro se* complaint (Entry No. 1) and the plaintiff's Answers to the Court's Special Interrogatories (Entry No. 5) pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 104 L.Ed.2d 338, 109 S.Ct. 1827, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995 U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)(recognizing the district court's authority to conduct an initial screening of any *pro se* filing);[5] Loe v.

---

[4]Pursuant to the provisions of  28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (DSC), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[5]Boyce has been held by some authorities to have been abrogated in part, on other grounds, by Neitzke v. Williams, 490 U.S. 319 (1989)(insofar as Neitzke establishes that a complaint that
(continued...)

Armistead, 582 F.2d 1291 (4th Cir. 1978), *cert. denied*, Moffitt v. Loe, 446

U.S. 928 (1980); and Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert.*

*denied*, Leeke v. Gordon, 439 U.S. 970 (1978).  The plaintiff is a *pro se*

litigant, and thus his pleadings are accorded liberal construction. *See* Hughes

v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405

U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or

petition, the plaintiff's or petitioner's allegations are assumed to be true.  Fine

v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975).  Even under this less

stringent standard, the § 1983 complaint is subject to summary dismissal.

The requirement of liberal construction does not mean that the court can

ignore a clear failure in the pleading to allege facts which set forth a claim

currently cognizable in a federal district court.  Weller v. Department of Social

Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

The defendants — the plaintiff's mother and her "evil twin" — are

subject to summary dismissal because they have not acted under color of

state law.  In order to state a cause of action under 42 U.S.C. § 1983, a

plaintiff must allege that: *(1)* the defendant(s) deprived him or her of a federal

---

(...continued)
fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit
*sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as
"frivolous").

right, and *(2)* did so under color of state law.  *See* <u>Gomez v. Toledo</u>, 446 U.S.

635, 640 (1980); and <u>American Mfr. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50-

52, 1999 U.S. LEXIS® 1711 (1999).  *See also* <u>Hall v. Quillen</u>, 631 F.2d 1154,

1155-1156 & nn. 2-3 (4th Cir. 1980), *cert. denied*, 454 U.S. 1141 (1982).

The district court in <u>Hall v. Quillen</u>, <u>supra</u>, had disposed of the case

against a physician and a court-appointed attorney on grounds of immunity.

In affirming the district court's order, the Court of Appeals, however, indicated

that lower courts should first determine whether state action occurred:

> * * * But immunity as a defense only becomes a relevant issue in
> a case such as this if the court has already determined
> affirmatively that the action of the defendant represented state
> action.  This is so because state action is an essential preliminary
> condition to § 1983 jurisdiction, and a failure to find state action
> disposes of such an action adversely to the plaintiff. * * *

<u>Hall v. Quillen</u>, 631 F.2d at 1155 (citations omitted).  *See also* <u>Lugar v.</u>

<u>Edmondson Oil Co.</u>, 457 U.S. 922, 936 (1982)("Careful adherence to the

'state action' requirement . . . also avoids imposing on the State, its agencies

or officials, responsibility for conduct for which they cannot fairly be blamed.").

Although a private individual or corporation can act under color of state

law, his, her, or its actions must occur where the private individual or

corporation is a willful participant in joint action with the State or with an agent

of the State.  <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980).  Purely private

conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Fourteenth Amendment. *See* Lugar v. Edmondson Oil Co., supra, 457 U.S. at 936; and Burton v. Wilmington Parking Authority, 365 U.S. 715, 721 (1961).

Whether a private individual's action or corporation's action rises to the level of state action necessarily depends on the relationship between the activity and the state. The inquiry involves "whether there is a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). In Blum v. Yaretsky, 457 U.S. 991, 1004 (1982), the Supreme Court held that a state is responsible for private action only when it has exercised "coercive power" or has provided "significant encouragement" in the implementation of the action. It is also well settled that "a private person does not act under color of state law simply because he invokes state authority." Brummett v. Camble, 946 F.2d 1178, 1184, 1991 U.S.App. LEXIS® 26889 (5th Cir. 1991), *cert. denied*, Campbell v. Brummett, 504 U.S. 965, 119 L.Ed.2d 241, 112 S.Ct. 2323, 1992 U.S. LEXIS® 3384 (1992).[6] *See also* Auster Oil & Gas Co., Inc. v. Stream,

---

[6]In this citation, there are variant spellings of the party known as Camble or Campbell.

764 F.2d 381, 388, 1985 U.S.App. LEXIS® 30764 (5th Cir. 1985); American Mfr. Mut. Ins. Co. v. Sullivan, supra, 526 U.S. at 50-52 (held: private insurer did not act under color of state law, for purposes of 42 U.S.C. § 1983, when it terminated payment of workers compensation benefits pending review); and cf. Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 2000 U.S.App. LEXIS® 18189 (3rd Cir. 2000)(applying holding in Sullivan to suit alleging action under color of federal law: termination of LHWCA [Longshoremen and Harbor Workers' Compensation Act] benefits by insurance company did not involve "federal government" action).  The participation by the plaintiff's mother (or her "evil twin') in Probate Court actions does not constitute action under color state law.[7]

This federal court does not have diversity jurisdiction to consider any state law claims raised by the plaintiff because the plaintiff and his mother are citizens of South Carolina.  See 28 U.S.C. 1332; and Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806).[8]

---

[7]The complaint does not disclose whether the Probate Court proceedings concern an estate or commitment proceedings.

[8]New provisions were added to the diversity statute in 2005 when the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), was enacted.  Those new provisions are not applicable in the case sub judice.

# *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without issuance and service of process because the defendant and her "evil twin" have not acted under color of state law.   *See* Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. *, 1993 U.S.App. LEXIS® 17715 (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); Boyce v. Alizaduh, supra; Todd v. Baskerville, supra, 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B)[essentially a redesignation of "old" 1915(d)]; and 28 U.S.C. § 1915A[as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal]. The plaintiff's attention is directed to the Notice on the next page.

January 19, 2007                         s/William M. Catoe
Greenville, South Carolina               United States Magistrate Judge

### Notice of Right to File Objections to Report and Recommendation

The plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Court Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** In the absence of a timely filed objection, a district court judge need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

## Larry W. Propes, Clerk
## United States District Court
## Post Office Box 10768
## Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in the waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).